UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

CHARLES C. WALKER, and STACEY
WALKER,
                          Plaintiffs,
                                                CIVIL ACTION
                                                No. 3:15-00064-JWD-RLB
VERSUS


FEDERAL INSURANCE COMPANY;
USA INSURANCE COMPANY; and
BOBBY WALDROP,
                          Defendants.


**ORDER ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**


**I.    INTRODUCTION**

       Before the Court is the Motion for Summary Judgment ("MSJ"), (Doc. 39), filed by one of three defendants, Federal Insurance Company ("FIC" or "Mover"). Mr. Charles Walker ("Charles") and Mrs. Stacey Walker ("Stacey") (collectively, "Walkers" or "Plaintiffs") have countered with the Opposition to the Defendant's Motion for Summary Judgment on the Issue of Liability ("Opposition"). (Doc. 41.) Mover responded with the Reply Memorandum ("Reply"). (Doc. 46.) In the MSJ, Opposition, and Reply (collectively, "Motions"), Plaintiffs and FIC, the uninsured motorist ("UM") carrier of Charles' employer, contest whether the so-called "sudden emergency doctrine" ("SED") applies and, if applicable, whether it exculpates FIC from liability for the accident involving Charles and another driver (and the sole natural defendant), Mr. Bobby Waldrop ("Waldrop"), that took place on May 20, 2014.

       In recounting that day's events, the Parties tell different tales. According to Mover, in response to a traffic jam, Charles maneuvered his vehicle into the left-hand emergency lane and

"suddenly and without warning" stopped, causing Waldrop, who performed the same maneuver at an unknown speed, to rear-end Plaintiff's vehicle. As the unfortunate byproduct of a sudden emergency, Mover argues, this crash cannot be blamed on Waldrop as a matter of law. Because liability cannot therefore attach, Plaintiffs are not legally entitled to recovery, and FIC is obliged to make no payment for damages pursuant to its UM policy ("Policy") with Charles' employer. Therefore, Mover contends that its MSJ must be granted pursuant to Federal Rule of Civil Procedure 56.[1]

Plaintiffs, however, contest SED's application and relevance. In brief, they contend that this doctrine's predicate elements have not been decisively proven and question its binding and conclusive character. In other words, Plaintiffs maintain that FIC has first mangled the known and incontestable facts and, second, has construed SED, nothing more than another factual consideration, into an ironclad rule absolving it of any liability.

The relevant jurisprudence, carefully considered, reveals three distinct principles, which militate against the MSJ. First, SED's application necessarily compels a fact-intensive analysis that, when made, reveals multiple factual issues which preclude summary judgment as to the Parties' culpability once both entered the relevant interstate's emergency lane. Second, SED is applicable to the standard of a motorist's conduct only after an emergency has arisen. According to well-settled law, it therefore does not apply to lower the standard of care required of motorists before the emergency occurs or after the relevant emergency has ended. As such, even if the traffic jam which prompted Charles and Waldrop to shift into another lane may qualify as an emergency—and this jam is what FIC expressly characterizes as the sole relevant emergency for

---

[1] In this ruling, any and all references to "Rule" or "Rules" are to the Federal Rules of Civil Procedure unless otherwise noted.

SED's purposes in the MSJ and the Reply—it is Waldrop's conduct *after* he entered the emergency lane and followed Charles' vehicle that is at issue here; as to the propriety of this conduct, no decisive conclusion can yet be drawn. Third, even if SED applied once Waldrop entered that lane, factual questions regarding whether he nonetheless exercised a circumstantially reasonable degree of care and caution, as required by this doctrine, remain unanswered. Each query, of course, is pivotal for the establishment of his ultimate quantum of fault, for had he trailed Charles too closely or too speedily, allegations advanced by Plaintiffs and impossible to conclusively resolve at present, SED can offer him—and FIC—no reprieve. For these reasons, as more fully explained below, this Court denied the MSJ on April 27, 2016, (Doc. 48).

## II.   BACKGROUND

### A.   Relevant Facts

On certain facts—that Plaintiff maneuvered into an emergency lane unexpectedly, and that Plaintiff subsequently stopped while traveling within that lane, two related yet discrete actions—the Parties do agree.

On May 20, 2014, Charles was traveling westbound on Interstate 12. (Doc. 39-1 at 2; Doc. 1-4 ¶ II at 1; Doc. 41 at 3.) As Charles came down an overpass bridge near this interstate's intersection with Airline Highway in Baton Rouge, Louisiana, at approximately 6:30 a.m., he encountered stopped vehicles ahead of him. (Doc. 39-1 at 2; Doc. 41 at 2–3; Doc. 1-4 ¶ II at 1[2]) Per his testimony, he at first only noticed the female driver of the vehicle in front of him "applying her brakes"; thereafter, Charles saw "other" drivers "light up" too. (Doc. 39-1 at 4.)

---

[2] Document 1-4 contains the Petition for Damages, the first pleading filed by Plaintiff in this proceeding prior to its removal to this Court. (Doc. 1 at 1.)

"Quick[ly]," though he had seemingly maintained a distance of about eight to ten car lengths and was traveling at 60 miles per hour, Charles maneuvered his car into the left-handed emergency lane, fearing an imminent crash—and "lots of deaths" and even a "slaughter"—if he suddenly stopped his car, a 2007 Ford E-250 truck then carrying a 3,000 pound unit. (*Id.*; *see also* Doc. 1-4 ¶ II at 1.) Trailing Charles at an unconfirmed distance and unable to discern the blocked traffic until he too had topped the overpass, Waldrop too veered his own 2001 Ford F-250 into the emergency lane. (Doc. 39-1 at 4–5; Doc. 1-4 ¶ III at 1.) Prior to applying his own breaks and moving his vehicle into the interstate's emergency lane, Waldrop was traveling at 60 miles per hour. (Doc. 39-1 at 6; Doc. 41 at 2, 4; Doc. 46 at 5.) This sudden veering into the emergency lane is the sudden emergency upon which FIC rests the MSJ. (*See, e.g.*, Doc. 39-1 at 10–11; Doc. 46 at 5.)

Thereafter, after Charles had passed three to five cars while traveling in the emergency lane, he stopped.[3] (Doc. 39-1 at 4–5; *see also* Doc. 1-4 ¶ V at 2; Doc. 41 at 3.) By his own admission, no vehicles blocked Charles' path, and he had not yet observed Waldrop's own lagging vehicle. (Doc. 39-1 at 4–5.) "Within seconds, and after letting his foot off the brake petal," Waldrop rear-ended Charles. (Doc. 39-1 at 4–5; *see also* Doc. 41 at 2, 4.) According to Waldrop, he did not anticipate Charles' stop within the emergency lane. (Doc. 39-1 at 5; *see also* Doc. 41 at 2–4.) Apparently, no skid marks were formed on the road at the point in which he allegedly stopped suddenly, says Charles. (Doc. 41 at 3–4, 9.) And no tire squealing was heard, admits Waldrop. (*Id.* at 4, 9.) Based on his testimony, Waldrop's speed at the time of this "substantial collision" was no more than thirty miles per hour. (*Id.*; *see also* Doc. 1-4 ¶ V at 2.)

---

[3] Whether he was making a "controlled stop" or using the emergency lane as a travel byway is disputed. (*Compare* Doc. 1-4 ¶ V at 2, *and* Doc. 41 at 2–3, *with* Doc. 39-1 at 4–5.)

Waldrop's speed as he traveled down the emergency lane remains unknown, his collision with Charles' truck due to his expectation that Charles would not "stop while traveling in the emergency lane." (Doc. 39-1 at 5.)

**B.     Procedural History**

Based on this accident, on December 19, 2014, Plaintiffs filed the Petition for Damages ("Petition") in the Nineteenth Judicial District Court for the Parish of East Baton Rouge. (Doc. 1-4; *see also* Doc. 1 at 1; Doc. 41 at 1.) In this initial pleading, Charles sought damages for "serious injuries to his neck, back, shoulder, and other parts of his body, together with past and future medical anguish and physical suffering; past and future expenses for medical care; past and future loss of enjoyment of life; past and future loss of earnings and impaired earning capacity." (Doc. 1-4 ¶ VII at 2; *cf.* Doc. 41 at 1.) Stacey, Charles' wife at the time, joined this suit, having suffered damages due to "a loss of consortium, services and society of her husband." (Doc. 1-4 ¶ IX at 3; *cf.* Doc. 41 at 1.) Plaintiffs sued three persons: Waldrop; USA Insurance Companies d/b/a Union Savings American Insurance Company ("USA"), Waldrop's insurance carrier; and FIC. (Doc. 1-4 ¶ I at 1, ¶¶ X–XI at 3, 4; *see also* Doc. 39 at 2.) Served with the Petition on January 14, 2015, FIC, with Waldrop's and USA's consent, filed the Notice of Removal on February 6, 2015. (Doc. 1 at 1; *see also* Doc. 2.) FIC first answered on February 10, 2015, (Doc. 3), and submitted the Amended Notice of Removal on March 11, 2015, (Doc. 7). With this Court's consent, (Doc. 9), it docketed a supplemental answer on March 17, 2015, (Doc. 8). FIC submitted the Complaint of Intervention on May 19, 2015, (Doc. 18), to which Plaintiffs, USA, and FIC responded, (Docs. 19–21). It filed the MSJ on January 6, 2016. (Doc. 39.) Though at first struck, the Opposition, (Doc. 41), was eventually accepted on February 2, 2016, (Doc.

45). The Reply arrived that same day. (Doc. 46.) A hearing on the MSJ was scheduled on April 18, 2016. (Doc. 47.) Oral argument was heard on April 27, 2016, at 9:30 a.m. (Doc. 48.) At this hearing's conclusion, this Court denied the MSJ and informed the Parties that this written opinion would soon follow. (*Id.*)

**C.     Parties' Arguments**

In general, FIC rests the MSJ entirely on SED. Because this doctrine "establishes that a motorist presented with a sudden emergency is not guilty of negligence as a matter of law if he or she fails to make the correct decision or action in response to the emergency," and as the accident "occurred suddenly and without warning because of a sudden emergency that was not created by . . . Waldrop," it cannot be liable under the Policy. (Doc. 39 at 1–2; *see also* Doc. 39-1 at 1–2; Doc. 46 at 2–3.) The legal conclusion, then, rides on several factual allegations described as "uncontested." (Doc. 39 at 2; *see also* Doc. 46 at 2–3.) First, neither Charles nor Waldrop could have seen the stopped vehicles until they both overtook the overpass; second, Charles' initial maneuver into the left-hand emergency lane was "sudden" and "unexpected[]"; and third, Charles' subsequent stop in the emergency lane was both "sudden[] and without warning," a decision supported by "no reason." (Doc. 39 at 2; Doc. 39-1 at 2, 4–5.) Based on these apparent and asserted facts, Waldrop was "confronted with a sudden emergency that was not brought about by his own negligence" and cannot be faulted for not "adopt[ing] what subsequently and upon reflection may appear to have been a better method." (Doc. 39-1 at 1; *see also* Doc. 46 at 2.) It was Charles' "sudden and unexpected stop" that "caused Waldrop to rear-end his vehicle." (Doc. 39-1 at 3; *see also* Doc. 46 at 2.) Indeed, according to his testimony, Charles "was engaged in a phone call . . . with one of his colleagues at the time of the incident," but Waldrop "was

traveling at the speed limit, was driving in his proper travel lane, and was not distracted by the radio or cellular phone," even "preserv[ing] a [perfect] safe distance between his vehicle and the vehicle to his front prior to the accident." (Doc. 39-1 at 3.) As "a sudden emergency render[ed the] accident unavoidable," compelling both Charles and Waldrop "to make . . . immediate decision[s] as to whether to strike the vehicles proceeding [sic] them or change lanes," Waldrop, neither negligent prior to the accident nor its cause, bears no fault. (*Id.* at 11–12; *see also* Doc. 46 at 5.) As such, as a matter of law, the Policy does not provide coverage to Plaintiffs, and summary judgment pursuant to Rule 56 must be issued. (Doc. 39-1 at 6; Doc. 46 at 2.)

After summarizing FIC's points, Plaintiffs launch four counterattacks.[4] First, they question whether SED, as FIC contends, can be "a complete bar to this action," as the doctrine "was created prior to the onset of comparative fault in Louisiana." (Doc. 41 at 5–6.) By their reckoning, SED is now "treated simply as one of the factual considerations to be used in assessing the degree of fault to be attributed to a party," so that even its uncontested utilization to this case would not entitle FIC to judgment at this time. (*Id.* at 5; *cf.* Doc. 1-4 ¶ V at 2.) Second, they cite to a longstanding presumption—that a rear-ending vehicle is at fault—and wed it to another conclusion: as Waldrop was "following too closely for the speed at which he was traveling," the presumption was not overturned by any emergency. (Doc. 41 at 6–7.) Third, Plaintiffs contend that Charles' use of the emergency lane was both "foreseeable" and "appropriate" and that, once he entered that lane, an action admittedly and cleanly observed by Waldrop, it was just as predictable that he would come to a rolling stop as he tried to reenter traffic. (*Id.* at 7–8.) In fact, pursuant to Louisiana law, Charles possessed no other legal option, as

---

[4] In the Conclusion to the Opposition, Plaintiffs list six reasons. (Doc. 41 at 10.) Considering the interrelated nature of two, this Court counts only four.

"the emergency lane may only be sued by non-emergency vehicles for limited, temporally finite purposes." (*Id.* at 8.) Waldrop may have "thought" Charles "would just continue driving westbound in the emergency lane and not stop," but he was not entitled to assume Charles would so defy clarion law by moving at an unvaried speed rather than slowly stopping in an attempt to merge both promptly and legally. (*Id.* at 8–9.) According to this version, "[t]he reality is that . . . [Mover] was following too closely and erroneously assumed that . . . [Charles] would illegally travel in the emergency lane after the reason for use of the emergency lane ceased to exist and, therefore, did not apply his brakes timely." (*Id.* at 9.) Fourth, Plaintiffs question whether the accident was truly "sudden" from Waldrop's perspective. True, Waldrop may not have foreseen the stopped vehicles, but he was able to see Charles' maneuvering into the emergency lane. (*Id.* at 9.) Upon doing so, Charles "was able to come to a rolling stop . . . and to avoid hitting the vehicles in front of him," as the absence of skid marks and rubber screeching evidences. (*Id.*) If Charles "could roll to a stop in the emergency lane" without hitting a single vehicle, Waldrop "should have been able to stop as well" if his speed was safe and his conduct while restricted to this lane truly not negligent. (*Id.* at 10.) Having made these points, Plaintiffs assert that "[t]here simply are [material] facts in dispute from which a jury could impose fault on . . . Waldrop." (*Id.*)

In the Reply, FIC not only recaps its prior points but also addresses parts of the Opposition. Thus, it again contends that, because "the emergency at issue – the stopped vehicles . . . – was sudden and unexpected], . . .] this Court should grant summary judgment." (Doc. 46 at 2–3.) Accusing Plaintiffs of applying hindsight, FIC again confines the pertinent emergency to the choice by Charles and Waldrop to turn into the emergency lane. (*Id.* at 3–4; *see also* Doc. 39 at 2.) In the making of this choice, "[t]he law is clear that Waldrop, because he was confronted

with a sudden emergency, 'should not be held to the same standard of control, care, and caution as someone who has ample opportunity to fully exercise judgment and reason.'" (Doc. 46 at 4.) Prior to the emergency, Waldrop exercised due care and cannot be guilty of negligence or subject to the presumption of fault when "he failed to adopt what subsequently and upon reflection may appear to have been a better method." (*Id.* at 5.)

### III. DISCUSSION

#### A. Governing Law

##### 1. *Procedural Law: Rule 56*

Within Rule 56 lies the standard applicable to both Parties' MSJs. Under Rule 56(a), summary judgment is generally appropriate "if the movant shows there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *Wilson v. Tregre*, 787 F.3d 322, 325 (5th Cir. 2015) (quoting Rule 56(a)). A dispute is "genuine" so long as "the evidence is such that a reasonable jury could return a verdict for the nonmoving party"; a fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986); *see also Ray v. United Parcel Serv.*, 587 F. App'x 182, 186 (5th Cir. 2014) (citing *Anderson*, 477 U.S. at 248). Axiomatically, a court construes all facts and evidence in the light most favorable to the nonmovant. *Haverda v. Hays Cnty.*, 723 F.3d 586, 591 (5th Cir. 2013). In response to another's motion, the nonmovant cannot rely on "[c]onclusory allegations, speculation, unsubstantiated assertions, and legalistic arguments," none "an adequate substitute for specific facts showing a genuine issue for trial." *TIG Ins. Co. v. Sedgwick James of Wash.*, 276 F.3d 754, 759 (5th Cir. 2002). Still, "[w]hen both parties have submitted evidence of

contradictory facts," *Boudreaux v. Swift Transp. Co., Inc.*, 402 F.3d 536, 540 (5th Cir. 2005), a court is bound to "draw all reasonable inferences in favor of the nonmoving party" and cannot "make credibility determinations or weigh the evidence," *Reeves v. Sanderson Plumping Prods.,* 530 U.S. 133, 150, 120 S. Ct. 2097, 2110, 147 L. Ed. 2d 105 (2000); *see also Anderson*, 477 U.S. at 248 (emphasizing the irrelevance of "[a]ny proof or evidentiary requirements imposed by the substantive law," materiality "not a criterion for evaluating the evidentiary underpinning of [factual disputes]"). Thus, "the court should give credence to the evidence favoring the nonmovant as well as that evidence supporting the moving party that is uncontradicted and unimpeached, at least to the extent that that evidence comes from disinterested witnesses." 9A C. WRIGHT & A. MILLER, FEDERAL PRACTICE AND PROCEDURE § 2529 (2d ed. 1995). In other words, "although the court should review the record as a whole, it must disregard all evidence favorable to the moving party that the jury is not required to believe." *Reeves*, 530 U.S. at 151, *cited in Havera*, 723 F.3d at 591. If more than a scintilla of evidence is assembled, "[t]he court must resolve factual controversies in favor of the nonmoving party." *White v. Gov't Emps. Ins. Co.*, 457 F. App'x 374, 377 (5th Cir. 2012). Under Rule 56, summary judgment is hence inappropriate (1) if there are legitimate, not superficial or frivolous, factual disputes that may affect the outcome of the case under the applicable substantive law, *see Anderson*, 477 U.S. at 248, and (2) so long as the nonmovant does not exclusively rely on "some metaphysical doubt as to the material facts," "conclusory allegations," "unsubstantiated" or "bare assertions," or "a scintilla of evidence," *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (citing *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888, 110 S. Ct. 3177, 3188, 111 L. Ed. 2d 695 (1990); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986); *Hopper v. Frank*, 16 F.3d 92, 94 (5th Cir. 1994); and *Davis v. Chevron*

*U.S.A., Inc.*, 14 F.3d 1082, 1086 (5th Cir. 1994)). An alleged "lack of evidence to support the non-moving party's case" can hence be countered by "[s]pecific evidence in the record," such tailored opposition foreclosing summary judgment. *Jobe v. ATR Mktg., Inc.*, No. 98-31366, 1999 U.S. App. LEXIS 40209, at *8–9, 1999 WL 511380, at *3 (5th Cir. June 23, 1999) (citing *Duffy v. Leading Edge Prods., Inc.*, 44 F.3d 308, 312 (5th Cir. 1995), and *ContiCommodity Servs., Inc. v. Ragan*, 63 F.3d 438, 441 (5th Cir. 1995)).

2.  *Substantive Law: SED*[5]

SED "is applicable to the standard of conduct of a motorist after an emergency has arisen." *Dick v. Phillips*, 218 So. 2d 299, 302 (La. 1969); *accord, e.g.*, Hadley v. Doe, 626 So. 2d 747, 750 (La. Ct. App. 1993). Accordingly, its application is subject to several caveats worthy of notice. In general, it "cannot be invoked by one who has brought that emergency on himself by his own wrong or who has not used due care to avoid it," and "it does not apply to lower the standard of care required of motorists before the emergency occurs." *Dick*, 218 So. 2d at 302; *see also King v. State Farm Ins. Co.,* 47, 368 (La. App. 2 Cir. 08/08/12), 104 So. 3d 33, 38. For this reason, though it does provide "an exception to the general rule that a following motorist is presumed negligent if he collides with the rear of a leading vehicle," as FIC notes and as Plaintiffs overlook, SED is still "no defense to a charge of negligence where the emergency was created by a motorist's lack of lookout, speed, [or] . . . following another vehicle too closely." *Fontenot v. Boehm*, 512 So. 2d 1192, 1194–95 (La. Ct. App. 1987) (internal quotation marks omitted); *see also, e.g.*, *Urcia v. Department of Transp. & Dev.*, 94-CA-78 (La. App. 5 Cir.

---

[5] This Court exercises diversity jurisdiction over this dispute, (Doc. 1 at 2–4), and Louisiana law provides the substantive rule of decision.

05/31/94); 638 So. 2d 416, 417 (summarizing the relevant jurisprudence). Thus, motorists who follow a preceding vehicle "too closely" or who "driv[e] too fast for conditions" cannot benefit from this defense, *Fontenot*, 512 So. 2d at 1195, as the claimant must first "show that the lead driver negligently created a hazard that could not reasonably be avoided," *Roberts v. Rudzis*, 2013 0538 (La. App. 1 Cir. 05/28/14); 146 So. 3d 602, 612 (Welch, J., dissenting). He or she, in other words, "must exonerate himself [or herself] from fault before he can completely avoid liability." *Harbin v. Ward*, 2013 1620 (La. App. 1 Cir. 05/29/14); 147 So. 3d 213, 218.

**B.     Application**

In accordance with this jurisprudence, with this Court forced to disregard any allegations that the jury itself would not be required to believe and construe all disputed but supported facts in the nonmovant's favor, *see, e.g.*, *Anderson*, 477 U.S. at 248; *White*, 457 F. App'x at 377, the MSJ must fall for two discrete reasons, each sufficient to justify this motion's denial.[6]

First, in characterizing the stalled traffic as the sole relevant emergency, FIC conflates two separate events over which Waldrop may bear varying degrees of fault. True, Waldrop may not have anticipated the sudden dam of cars that greeted him after the overpass, but the relevant

---

[6] A third reason, one advanced by Plaintiffs—that SED is now no more than a factual consideration for a jury's purview, (Doc. 41 at 5–6)—and disputed by FIC, decidedly favors neither side. As Plaintiffs observe, since Louisiana's passage of comparative fault in 1980, LA. CIV. CODE art. 2323, this defense has occasionally been "treated simply as one of the factual considerations which is to be used in assessing the degree of fault to be attributed to a party," *Lee v. Davis*, 03 997 (La. App. 5 Cir. 12/30/03); 864 So. 2d 780, 784 (quoting *Manuel v. St. John Baptist Parish Sch. Bd.*, 98-1265, p. 4 (La. App. 5 Cir. 03/30/99), 734 So. 2d 766, 769); *accord, e.g.*, *King*, 104 So 3d at 38. Nonetheless, as FIC stresses in the Reply, (Doc. 46 at 4–5), this approach has not been uniformly followed by this state's courts, *see, e.g.*, *Harbin*, 147 So. 3d at 219 ("While the sudden emergency doctrine has not been subsumed by comparative fault, . . . some courts have treated the defense of sudden emergency as one of the factual considerations used in assessing the degree of fault to be attributed to a party." (citations omitted)). On this issue of state law, with a multitude of contrary cases easily found, this Court will not pass.

incident did not take place upon the emergence of this unexpected and unanticipated hazard. Rather, having managed to slow without hitting a single car and having maneuvered into the emergency lane occupied by Charles' car, Waldop proceeded to hit the latter. It is the fault to be properly attributable to Waldrop's actions once he entered the emergency lane, not his response to another one of Baton Rouge's innumerable traffic jams, which forms the predicate of Plaintiffs' present action. Assuming, as Rule 56 requires this Court to do, that Charles was, in fact, momentarily and temporarily driving between twenty-five and thirty miles per hour in an emergency lane before coming to a full but rolling stop, a reasonable jury could yet believe that Waldrop was following too closely and moving too quickly for a driver temporarily confined to a lane in which drivers are expected to be traveling at a lower rate of speed and, occasionally, crawl or halt rather abruptly. By any fair measure, that a preceding vehicle in a traffic lane would stop as it attempts to merge into active traffic is not a wholly unforeseeable and unexpected occurrence, the kind of hazard for which SED was designed.

Hence, the two "facts" upon which FIC rests the MSJ—that Waldrop had been traveling at the proper speed limit before entering the emergency lane, and that the jam was a hindrance that he did not create—would not absolve him of fault if, upon and after driving his vehicle into the emergency lane, he moved at a clip unsuitable for his then current location. Certainly, for purposes of SED, the relevant hazard was not the jam to which both Charles and Waldrop reacted similarly, as FIC so strenuously maintains, (Doc. 39-1 at 6; Doc. 46 at 2). By law and logic, Charles' decision to stop his slowly-moving vehicle was the true relevant emergency, a decision whose unexpectedness is undercut by the scene's pregnant absence of skid marks and screeching tires, (Doc. 41 at 9–10), a factual allegation that FIC never denies, (*See* Doc. 46). In short, by focusing so much upon the jam to which both Charles and Waldrop adjusted without

incident, FIC has failed to prove the incontestability of two essential facts: that, first, the pertinent hazard—that Charles would allegedly come to "a rolling stop" in the emergency lane—was unforeseeable and, second, that Waldrop not negligent as he traveled down a congested highway's emergency lane. Because both it failed to do so and the evidence can be reasonably read to suggest the very opposite, FIC has failed to demonstrate an absence of dispute over a material fact.

Second (and relatedly), too many factual questions are still unanswered, too many ifs and buts still subject to reasonable dispute. As already noted, SED provides Waldrop with no defense if he drove negligently on May 20, 2014, while confined to Interstate 12's emergency lane. Even if this Court assumes that he had been acting reasonably and responsibly before topping the overpass and could not be blamed for any accident that would have occurred had he been unable to maneuver, no evidence but his own testimony exists to indicate he acted with appropriate care under the circumstances thereafter or that Charles himself negligently created an unexpected hazard. According to Waldrop, Charles stopped "suddenly," "without warning," and presumably without justification. (*See, e.g.*, Doc. 39-1 at 5 –6.) Yet, according to Charles, he came to a rolling stop as he attempted to return into active traffic and after traveling at thirty miles per hour in an emergency lane. (Doc. 41 at 3 –4; *see also* Doc. 1-4 ¶ V at 2.)  Indeed, even Waldrop concedes that instead of maintaining a distance of five to ten cars, as he had done only minutes before, only two cars separated his truck from Charles' own right before (and possibly right after) he "maneuver[ed] into the left-hand emergency lane." (Doc. 39-1 at 5.) He may—or may not—have maintained such a distance after both cars entered this cabined pathway; he may—or may not—have been too close, the distance then maintained safe—or maybe not at all—based on his immediate and actual surroundings. Waldrop's story, if accepted as true by a factfinder able

to choose what to believe and what to disregard, would tend to establish the prerequisites for SED's application. Conversely, Charles' version, if so proved, would suggest its inapplicability. In light of these two colorable yet contradictory possibilities, with "[t]he existence of negligence and the allocation of fault" long considered to be "factual" determinations under Louisiana law, *Easter v. Direct Ins. Co.*, 42,178 (La. App. 2 Cir. 05/09/07), 957 So. 2d 323, 328, Rule 56 demands that their resolution lie in a jury's, not this Court's, hands.

### IV.   CONCLUSION

Accidents are often murky events in which perspectives nearly always jumble and rarely cohere. By relying upon SED, an invariably fact-specific doctrine, FIC has overlooked the record's many ambiguities. In the process, it has conflated the unfortunate series of events that took place on May 20, 2014, and drew Waldrop and Charles into a painful first meeting. Pursuant to governing law, too much is now unknown, and Waldrop's negligence could still be shown based on the facts on hand, however unlikely it may seem to FIC. Stated differently, the Parties have submitted evidence of too many contradictory and material facts. So convinced, in accordance with Rule 56, this Court will not make the credibility determinations essential to this case's resolution; indeed, this Court cannot do so. Accordingly, for the foregoing reasons, this Court DENIED the Motion for Summary Judgment, (Doc. 39).

Signed in Baton Rouge, Louisiana, on <u>April 29, 2016</u>.

_____
**JUDGE JOHN W. deGRAVELLES**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**